IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 06-cv-01416-WDM-KLM

JOSEPH BRAZIER, LTD, a United Kingdom Corporation, *et al.*,

    Plaintiffs,

v.

SPECIALTY BAR PRODUCTS COMPANY, a Pennsylvania corporation,

    Defendant.

## ORDER ON MAGISTRATE JUDGE RECOMMENDATION

Miller, J.

    This matter is before me on a recommendation by Magistrate Judge Kristen L. Mix (Docket No. 90), issued January 5, 2009, recommending that Defendant Specialty Bar Products Company's Motion to Enforce Settlement Agreement (Docket No. 76) be granted. As Plaintiffs' objections were filed more than ten days after Magistrate Judge Mix's recommendation, the objections are not timely and Plaintiffs are not entitled to *de novo* review. 28 U.S.C. § 636(b); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1462 (10th Cir. 1988). For the reasons set forth below, I reject Magistrate Judge Mix's recommendation and conclude that there is no enforceable agreement in this case.

### Background[1]

    Plaintiffs initiated this lawsuit in June 2006 in the District Court of El Paso County, Colorado alleging four claims for relief resulting from an agreement between

---

[1] For a full recitation of all the facts of this case see my Order on Motion for Summary Judgment (Docket No. 67) entered March 21, 2008.

PDF Final

the parties for the purchase of gun barrels.  Defendant removed the case to this Court on July 20, 2006 based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Defendant answered and filed a breach of contract counterclaim against Plaintiffs.  Plaintiffs subsequently filed an amended complaint asserting seven claims for relief (Docket No. 27).  Defendant answered the amended complaint (Docket No. 31).  Although not included in the amended answer, the parties stipulated that Defendant's counterclaim remained pending.  (*See* Docket No. 32.)  By Order dated March 21, 2008, I dismissed four of Plaintiffs' claims and granted summary judgment to Defendant on its counterclaim.  (*See* Docket No. 67.)  I determined that Defendant was entitled to $22,500 in damages on its counterclaim.  *Id.*

Subsequently, the parties negotiated to resolve the entirety of the case.  By letter dated June 13, 2008, Plaintiffs made a settlement offer (the "June Offer Letter").  (*See* June 13, 2008 Letter, Docket No. 76-3.)  The letter stated that Plaintiffs offered to:

> (a) pay the sum of twenty-two thousand, five hundred U.S. Dollars ($22,500),
> (b) dismiss all claims with prejudice and sign a release covering the time period through the date of the release
>
> *in exchange for*
>
> (a) a full release of liability from [Defendant's] counterclaims (including any right to costs associated therewith),
> (b) a signed agreement between JBL and [Defendant] stating that the [Non-Disclosure Agreement] is valid and continues to protect JBL trade secrets from unauthorized disclosure or use, and
> (c) [Defendant] dismisses its claims with prejudice.

*Id.*  The letter further stated that the offer was "conditioned upon the execution of a mutually agreeable settlement agreement incorporating the intent of the settlement terms listed."  *Id.*  The letter stated that the offer remained open until June 18, 2008.  *Id.*

On June 25, 2008,[2] past the cut-off date in the Offer Letter, Defendant accepted the offer of settlement (the "June Acceptance Letter") stating that the "letter confirms that we agreed in principle to a settlement of the . . . case" and that the "material terms are set forth in [the] June 13, 2008 letter." (June 25, 2008 Letter, Docket No. 76-4.) The June 25, 2008 letter, however, added a few "clarifications" to the terms of the June 13, 2008 letter:

> (1) the parties will exchange general mutual releases; (2) the non-disclosure issue will be addressed in the settlement agreement; (3) the settlement agreement will include recitals related to the nature and scope of [Defendant's] work; and (4) [Defendant] will file a satisfaction of judgment (in lieu of dismissing its counterclaim with prejudice) upon the tender of the $22,500.

*Id.* The June 25, 2008 letter further stated that Defendant would "draft and circulate a settlement agreement/general mutual release that more fully and formally memorializes the settlement agreement." *Id.* The parties apparently agree that these two letters formed an enforceable agreement (the "Initial Settlement").

During the course of the next few months, Plaintiffs and Defendant attempted to execute the formal settlement agreement but were ultimately unsuccessful. As these negotiations did not result in execution of a formal settlement agreement, in early August 2008, Plaintiffs suggested that they abandon their settlement negotiations and move forward solely on the basis of the Initial Settlement. On August 7, 2008, Defendant sent Plaintiffs what it termed a "revised, final draft of the settlement agreement" (the "August 7 Agreement"), which it argued "incorporate[d] every material term that the parties agreed to in June 2008." (August 7, 2008 Email, Docket No. 76-8.)

---

[2] Although the letter is actually dated June 6, 2008, the parties apparently agree that it was sent on June 25, 2008.

The email further stated that if Defendant did not hear from Plaintiffs by 5:00 p.m. on August 8, 2008, Defendant would assume that Plaintiffs objected to the form of the agreement. *Id.* Plaintiffs formally rejected the August 7 Agreement on August 15, 2008 and sent yet another revised settlement agreement. (*See* August 15, 2008 email; Docket No. 76-9.) After reviewing Plaintiffs' proposed changes, Defendant determined that they were outside the scope of the Initial Settlement and, therefore, re-tendered the August 7 Agreement which it again argued was the "final draft of the settlement agreement that incorporated all the material terms of the parties' agreement." (August 19, 2008 Letter, Docket No. 76-10.) The letter gave a deadline of 5:00 p.m. on August 20, 2008 to accept the agreement. Plaintiffs again rejected the August 7 Agreement.

Therefore, Defendant filed its Motion to Enforce Settlement Agreement (Docket No. 76) on August 20, 2008 arguing that because the August 7 Agreement incorporated all of the material terms of the Initial Settlement, it should be enforced. Plaintiffs responded (Docket No. 83) arguing that the Initial Settlement should be summarily enforced. Defendant replied (Docket No. 84).

<u>Legal Standard</u>

"'A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it.'" *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (quoting *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993)). "Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." *Id.* (citing *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000)). In Colorado, "[i]n order for a settlement to be binding and enforceable, there must be a 'meeting of the minds'

as to the terms and conditions of the compromise and settlement." *H.W. Houston Constr. Co. v. District Court*, 632 P.2d 563, 565 (Colo. 1981). "[T]he evidence must show that the parties agreed upon all essential terms." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986). Indeed, "it must appear that further negotiations are not required to work out important and essential terms." *New York Life Ins. Co. v. KN Energy, Inc.*, 80 F.3d 405, 409 (10th Cir.1996) (citing *Am. Mining Co. v. Himrod-Kimball Mines, Co.*, 235 P.2d 804, 807–08 (1951) (en banc) and *Pierce v. Marland Oil Co.*, 278 P. 804, 806 (1929)). In other words, the terms of the settlement agreement or contract must be "clear, unambiguous, and capable of enforcement." *City and County of Denver v. Adolph Coors Co.*, 813 F.Supp. 1476, 1479 (D.Colo.1993).

Under Colorado law, the essential elements of a contract include "mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration." *Indus. Prod. Int'l v. Emo Trans., Inc.*, 962 P.2d 983, 988 (Colo. Ct. App. 1997) (citation omitted). "An offer is a manifestation by one party of a willingness to enter into a bargain [and a]n acceptance is a manifestation of assent to the terms of the offer." *Id.* (citing Restatement (Second) of Contracts §§ 24, 32 (1979)). Furthermore, to form an enforceable agreement, an offer must be accepted as-is, that is, the terms of the acceptance must be identical to the terms of the offer, without any changes. *Nucla Sanitation Dist. V. Rippy*, 344 P.2d 976, 979 (Colo. 1959); *Goodwin v. Eller*, 258 P.2d 493, 496 (Colo. 1953); *Arenbarg v. Cent. United Life Ins. Co.*, 18 F.Supp. 1167, 1174 (D. Colo. 1998) (citing *Nucla*, 344 P.2d at 979 and *Goodwin*, 258 P.2d at 496); *Citywide Bank v. Herman*, 978 F.Supp. 966, 977 (D. Colo. 1997) (citing *Nucla*, 344 P.2d 979). If the acceptance is not identical, it acts as a counteroffer and

the original offer is deemed rejected. *Nucla*, 344 P.2d at 979; *Goodwin*, 258 P.2d at 496; *Arenbarg*, 18 F.Supp. At 1174 (citing *Nucla*, 344 P.2d at 979); *Citywide Bank*, 344 F.Supp. at 966 (citing *Nucla*, 344 P.2d at 979).

"'It is established that a signature is not always necessary to create a binding agreement.'" *Coors*, 813 F.Supp. at 1480 (quoting *Presidential Motor Yacht Corp. v. President Marine, Ltd.*, 753 F.Supp. 7, 13 (D.D.C. 1990)). However, "a party is not bound by an oral agreement if it does not intend to be bound until a formal document is executed." *Id.* at 1481. When there is an oral agreement that has not been reduced to a formal writing, the party arguing against enforcement must demonstrate "either that both parties understood they were not to be bound until the executed contract was delivered, or that the other party should have known that the disclaiming party did not intend to be bound before the contract was signed." *Id.* To determine whether a party intended to be bound by an agreement before execution of written instrument, I must examine four factors:

> (1) whether the parties have stated an intention not to be bound absent an executed writing, (2) whether one party has performed partially and the other party has accepted such performance, (3) whether there are no issues left to be negotiated such that the signing of the contract is merely ministerial, and (4) whether the agreement concerns complex business matters such that a written agreement would be the norm, not the exception.

*Id.* (citing *PDL Vitari Corp. v. Olympus Indus., Inc.*, 718 F.Supp. 197, 206–07 (S.D. N.Y. 1989)).

## Discussion

In this case, Magistrate Judge Mix determined that the August 7 Agreement should be enforced because the parties had agreed on the essential terms as articulated in that agreement. I disagree. First, I note that Magistrate Judge Mix did not

address the four *Coors* factors as they relate to the Initial Settlement, instead assuming that the parties had entered into an enforceable agreement in June 2008. Defendant argues that the parties entered into an enforceable agreement in June 2008. Plaintiffs, however, argue that the Initial Settlement is only enforceable because they *now* agree to the terms by waiving the express condition contained in the June Offer Letter that a formal agreement be executed. Therefore, as it is disputed whether the parties entered into an enforceable agreement in June 2008 without subsequent execution of a formal agreement, it is necessary to address the four *Coors* factors as they relate to the Initial Settlement.

First, the June Offer Letter indicated that the offer was "conditioned upon the execution of a mutually agreeable settlement agreement incorporating the intent of the settlement terms listed." (June 13, 2008 Letter, Docket No. 76-3.) This clearly shows Plaintiffs' intent to not be bound absent a written agreement and also demonstrates that Defendant "should have known that [Plaintiffs] did not intend to be bound before the contract was signed." *See Coors*, 813 F.Supp. at 1480. Even if Defendant "accepted" the offer in the June Acceptance Letter, the agreement was still conditioned on the execution of a mutually acceptable written instrument. Furthermore, the "clarifications" articulated in the June Acceptance Letter may have turned the acceptance into a counteroffer as acceptance generally must be under identical terms. *See e.g.*, *Nucla*, 344 P.2d at 979. Under this analysis, the counteroffer was not accepted in June as Plaintiffs did not manifest their assent to the additional or "clarified" terms. In any case, I conclude that the inclusion of the condition in the June Offer Letter weighs heavily in favor of a finding that the parties were not bound absent a formal written agreement.

The second *Coors* factor also weighs against a finding of intent to be bound as neither party has partially performed or accepted performance. There is no evidence that payment has been made, a satisfaction of judgment entered on Defendant's counterclaims, or the parties have released each other from liability or dismissed the case with prejudice. With respect to the third *Coors* factor, although both parties agree that the terms of the Initial Settlement are enforceable, there were apparently at least some issues left to be determined and negotiated as evidenced by the parties continued negotiations on the final settlement agreement throughout June, July, and August 2008. Therefore, given the conflicting evidence, I conclude that this factor does not weigh toward either conclusion. Finally, I conclude that this type of agreement—settlement of a lawsuit and mutual releases—is generally the type that is reduced to writing. Thus, this factor also indicates that the parties did not intend to be bound by the Initial Settlement without a further written agreement. Therefore, under the *Coors* factors, I conclude that the parties did not enter into a binding agreement with the June 2008 Initial Settlement.

As there was no binding agreement reached under the Initial Settlement in June 2008, the subsequent negotiations surrounding the formal settlement agreement can be viewed as either an attempt to fulfill the terms of the June Offer Letter or as further negotiations for settlement. In either case, as no agreement was ever reached, I conclude that none of the proposed settlement agreements are binding or enforceable. Under the former interpretation, the parties were merely attempting to finalize the terms of the June Offer Letter and, as they failed to execute a formal document, the offer's terms were not met. Therefore, there is not a binding agreement based on the June Offer Letter. Under the latter interpretation, each proposed settlement agreement acted

as a separate offer and, as no version was ever agreed upon, there was never an acceptance such that the parties became bound by any of the proposed written agreements, including the August 7 Agreement.

I further note that *Yaekle v. Andrews*, 169 P.3d 196 (Colo. Ct. App. 2007), relied upon by Magistrate Judge Mix, does not change my analysis. In *Yaekle*, following mediation, the parties signed a one-page written settlement agreement, which included the provision that formal documents were to be prepared by defense counsel within two weeks. *Yaekle*, 169 P.3d at 197. Upon the defendants' tender of the formal documents, however, the plaintiff objected to a single provision. *Id.* at 199. In response to the plaintiff's concerns, the defendants authorized the plaintiff to amend the single provision, thereby accepting the plaintiff's version of the document. *Id.* When the plaintiff failed to do so, the defendants sent a revised settlement agreement with the specific language requested by plaintiff inserted into the agreement. *Id.* The plaintiff later disputed that this final revised settlement agreement was enforceable. *Id.* The Colorado Court of Appeals determined that the final formal settlement agreement was enforceable because it included the specific language that plaintiff requested and the parties had subsequently represented to the court that they had reached a full and complete settlement. *Id.* at 200.

I conclude that *Yaekle* is inapplicable to this case. First, there was no dispute in *Yaekle* that the parties actually entered into an initial agreement. Although it included the provision that a formal document would be executed, it was not conditioned on such execution, and the parties subsequently indicated to the court that they had reached an agreement. Indeed, the Colorado Court of Appeals stated that the issue was "whether the [final] revised settlement agreement drafted. . . by defendants constitutes an

enforceable settlement agreement, thereby replacing the [initial] agreement, or whether the [initial] basic agreement is the only agreement approved by the parties." *Yaekle*, 169 P.3d at 198. Conversely, in this case, the parties never reached an initial agreement because the June Offer Letter was expressly conditioned on the execution of a formal agreement, which was never completed.

Second, the parties in *Yaekle* agreed upon a formal settlement agreement because the defendants accepted without modification the terms of the plaintiff's revised settlement agreement. In this case, there was never such an acceptance. Although the parties negotiated the final settlement agreement by sending versions back and forth, neither party accepted the others' version. Indeed, both Plaintiffs and Defendant acknowledge that the final settlement agreement was never formally agreed upon or executed. Furthermore, both of Defendant's proffers of the August 7 Agreement, in the August 7, 2008 email and the August 19, 2008 letter included a deadline for acceptance of the formal agreement. (*See* August 7, 2008 Email, Docket No. 76-8; August 19, 2008 Letter, Docket No. 76-10.) There is no evidence that Plaintiffs accepted either tender of the August 7 Agreement. Therefore, I conclude that *Yaekle's* methodology is inapplicable in this case. Thus, I disagree with Magistrate Judge Mix's recommendation and conclude that the August 7 Agreement cannot be enforced as it was not mutually agreed upon. *See H.W. Houston*, 632 P.2d at 565 ("In order for a settlement to be binding and enforceable, there must be a 'meeting of the minds' as to the terms and conditions of the compromise and settlement.").

Furthermore, because I concluded that the Initial Settlement is not a binding agreement either because there was no "as-is" acceptance or because the express condition of execution of a formal agreement was not met, there is no agreement to

enforceable settlement agreement, thereby replacing the [initial] agreement, or whether the [initial] basic agreement is the only agreement approved by the parties." *Yaekle*, 169 P.3d at 198. Conversely, in this case, the parties never reached an initial agreement because the June Offer Letter was expressly conditioned on the execution of a formal agreement, which was never completed.

Second, the parties in *Yaekle* agreed upon a formal settlement agreement because the defendants accepted without modification the terms of the plaintiff's revised settlement agreement. In this case, there was never such an acceptance. Although the parties negotiated the final settlement agreement by sending versions back and forth, neither party accepted the others' version. Indeed, both Plaintiffs and Defendant acknowledge that the final settlement agreement was never formally agreed upon or executed. Furthermore, both of Defendant's proffers of the August 7 Agreement, in the August 7, 2008 email and the August 19, 2008 letter included a deadline for acceptance of the formal agreement. (*See* August 7, 2008 Email, Docket No. 76-8; August 19, 2008 Letter, Docket No. 76-10.) There is no evidence that Plaintiffs accepted either tender of the August 7 Agreement. Therefore, I conclude that *Yaekle's* methodology is inapplicable in this case. Thus, I disagree with Magistrate Judge Mix's recommendation and conclude that the August 7 Agreement cannot be enforced as it was not mutually agreed upon. *See H.W. Houston*, 632 P.2d at 565 ("In order for a settlement to be binding and enforceable, there must be a 'meeting of the minds' as to the terms and conditions of the compromise and settlement.").

Furthermore, because I concluded that the Initial Settlement is not a binding agreement either because there was no "as-is" acceptance or because the express condition of execution of a formal agreement was not met, there is no agreement to

enforce in this case. Although the parties appear to agree that the Initial Settlement should somehow be binding and enforceable (*see* Def.'s Mtn. for Summ. J., Docket No. 76 at 6; Pls.'s Resp. Br., Docket No. 83 at 5.), the facts of this case and the parties' own actions belie this argument. Indeed, the parties now seek to enforce different agreements, *i.e.*, Defendants seek to enforce the August 7 Agreement while Plaintiffs seek to enforce the Initial Settlement, and the parties were unsuccessful at reaching a finalized formal agreement after spending considerable time and energy attempting to do so. Therefore, regardless of the parties' assertions to the contrary, with respect to the Initial Settlement, it is clear that the parties have not agreed upon all the essential terms, *see I.M.A., Inc.*, 713 P.2d at 888, and there has not been a "meeting of the minds as to the terms and conditions" of the settlement, *H.W. Houston*, 632 P.2d at 565. Furthermore, it is clear that further negotiations are required to work out important and essential terms as the parties themselves entered into extended negotiations to formalize their purported June 2008 agreement. *See New York Life*, 80 F.3d at 409 (citing *Am. Mining Co.*, 235 P.2d at 807–08). Therefore, I also decline to enforce the Initial Settlement.

However, because the parties appear to agree that they entered into an agreement and the underlying litigation has been resolved, I conclude that it is appropriate to give the parties an option for how to move forward in this case. Therefore, the parties must decide whether they will (1) move forward on Plaintiffs remaining three claims and schedule the underlying case for trial; or (2) stipulate that there is a settlement in this case that resolves all of the underlying issues and schedule either a trial or court hearing to determine the unresolved terms of that agreement.

Accordingly, it is ordered:

1. The recommendation of Magistrate Judge Mix (Docket No. 90), issued January 5, 2009, is rejected.

2. Defendant's Motion to Enforce Settlement Agreement (Docket No. 76) is denied.

3. The parties are directed to file a joint status report by March 27, 2009 indicating whether they wish to:

    (a) schedule the matter for trial; or

    (b) stipulate that they have settled the underlying dispute, dismiss the underlying complaint with prejudice, and schedule the matter for either trial or hearing to determine the unresolved issues of their settlement agreement.

DATED at Denver, Colorado, on March 12, 2009.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge